1. This case was initially brought by Ivan and Dorothy Wallingford, however, Ivan Wallingford has since passed away. Because Ivan and Dorothy Wallingford held title as joint tenants, and Mr. Wallingford's death has been suggested upon the record pursuant to M.R.

The entry is:

Judgment affirmed.

2000 ME 112

Dorothy WALLINGFORD [1]

v.

Sharon KENNEDY et al.[2]

Supreme Judicial Court of Maine.

Argued Jan. 4, 2000.
Decided June 15, 2000.

Civ. P. 25(a)(2), the case proceeds in Dorothy Wallingford's name alone.

2. This caption reflects the parties in interest on appeal and omits the parties to the case that was consolidated with this one, but which was not appealed.

Joel C. Martin (orally), Michael K. Martin, Petruccelli & Martin, LLP, Portland, for plaintiff.

Theodore H. Kurtz (orally), Kurtz & Perry, South Paris, for defendants.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] Ivan and Dorothy Wallingford appeal from a judgment entered in the Superior Court (Androscoggin County, *Studstrup, J.*) finding for Sharon Kennedy and Robert Foss on the Wallingfords' trespass claims and finding for Sharon Kennedy on her counterclaim seeking a declaratory judgment that she is the owner of the parcel of property in dispute between the parties. The Wallingfords argue that the court erred when it determined the boundary between the Wallingfords' and Kennedy's land. We agree and vacate the judgment.

## I. STATEMENT OF FACTS

[¶ 2] In 1987, the Land Tree Corporation, which is owned by Robert Foss and his wife through its parent corporation, acquired a piece of land in the Town of

Minot. In the fall of 1993, Foss looked into building a house for his daughter, Sharon Kennedy, on a triangular piece of land that he believed was part of the parcel acquired in 1987. He asked George Courbron to identify the boundary lines of the property for him.

[¶ 3] Courbron had previously prepared a subdivision plan for one of the prior owners of the parcel. Using that plan, as well as tax maps and deeds, Courbron drew up a plan for Foss. Courbron, however, indicated that he had merely traced the disputed boundary from a tax map and that he had not actually surveyed the boundary in question according to standard boundary survey procedures.

[¶ 4] With the plan indicating that the disputed parcel was part of the parcel acquired by Land Tree in 1987, Foss hired a company to clear the land. After the company began cutting timber on the land, Ivan Wallingford noticed the operation. Ivan was under the impression that the triangular piece of land being cleared was part of a piece of property that belonged to him and his wife. Ivan approached the individuals doing the cutting and asked them to stop. Although the parties differ as to the details, Ivan and Foss spoke with one another sometime shortly thereafter. Foss referred Ivan to Courbron, but the dispute remained unresolved after Ivan and the surveyor met. Because of the dispute, Foss built the house on an undisputed portion of the property owned by Land Tree. In 1995, Land Tree conveyed the 1987 parcel to Sharon Kennedy.

[¶ 5] In 1997, the Wallingfords filed a complaint against Kennedy and Foss seeking damages for trespass, punitive damages for cutting timber, and a declaratory judgment regarding the ownership of the property. Kennedy filed a counterclaim seeking a declaratory judgment regarding

the ownership of the disputed parcel. Land Tree filed a complaint against the Wallingfords for, *inter alia,* intentional interference with its contractual relations. The cases were consolidated.[3]

[¶ 6] The following evidence was introduced at trial: In 1957, Lucien Bardier owned two abutting parcels in Minot, one of which he transferred to John Wallingford, and the other he transferred to John G. and Eugene O. Wallingford. In the deed to John G. and Eugene O. Wallingford, the relevant boundary in the northern corner of the property was described thus:

On the north by York Road so-called

On the east by land of the Foster Lumber Co.

On the north by old Town road now discontinued

On the east by land of John Wallingford [4]

Neither party disputes the fact that the York Road referred to in this deed is the same road that the Wallingfords now claim marks the boundary between their property and that of Kennedy. The above boundary call resulted in the disputed triangle of property being included in the parcel of land transferred to John G. and Eugene O. Wallingford. In 1962, these two parcels were conveyed in one deed to John Wallingford Fruit House, Inc. (Wallingford Fruit House) excepting a parcel not relevant to this appeal. Ownership of the two parcels was thereby reunified. The only descriptions of the two parcels in the deed to Wallingford Fruit House refer back to the deeds from Lucien Bardier.

[¶ 7] In 1984, Wallingford Fruit House conveyed the parcel formerly belonging to John Wallingford to Chuck R. Starbird, again excepting parcels not relevant to this

3. Judgment was entered for the Wallingfords in the case brought by Land Tree and Land Tree did not appeal from that decision.

4. As noted by the Wallingfords, the directional calls are roughly ninety degrees off, there-

fore "north" should be replaced with "west" and "east" should be replaced with "north." Because the parties agree on the boundaries described in *this* deed, the directional calls are not material.

appeal. One of the alternate descriptions of the property refers back to the Bardier deed to John Wallingford. Later that year, Starbird deeded the property back to Wallingford Fruit House, who in turn deeded it back to Starbird. The parties agree that the purpose of this series of exchanges was to correct the description of one of the excepted parcels that, as noted previously, is not relevant to this appeal. Notably, however, all three deeds continued to refer back to the original Bardier deed as an alternate description of the property. The parties do not dispute the fact that at this point in time, the York Road referred to in the Bardier deed ran along the road now claimed by the Wallingfords to mark their boundary with Kennedy and that it marked the boundary of the two parcels that had again been separated by the conveyance to Starbird.

[¶ 8] As a result of these conveyances, Wallingford Fruit House still owned the parcel of land once belonging to John G. and Eugene O. Wallingford that included the disputed triangle of land. Starbird now owned the land once belonging to John Wallingford. The next reunification of the two parcels took place in 1987.

[¶ 9] In August 1987, Starbird conveyed the parcel of property that formerly belonged to John Wallingford to Peter Wallingford. The description in the deed refers back to the deed conveying the land to him that in turn refers back to the Bardier deed. Also in August 1987, Wallingford Fruit House conveyed all of its property in the towns of Auburn, Minot and Bowdoinham to Peter Wallingford. This included the parcel of land formerly belonging to John G. and Eugene O. Wallingford that included the disputed triangle. Ownership of the two parcels was united again.

[¶ 10] All the land conveyed from Wallingford Fruit House to Peter Wallingford was described in a separate attachment incorporated by reference in the deed. Notably, also included in this attachment was a description of the property that Wallingford Fruit House had *already* conveyed to Starbird and no longer owned .[5] This error would be of little consequence because Starbird conveyed the piece of property to Peter Wallingford anyway, but the description of the parcel in the attachment is not the one contained in previous deeds and it is the *first* description of the property that includes the disputed boundary call.

[¶ 11] When Peter Wallingford conveyed the parcel formerly belonging to Starbird to Earl and Constance Sprague, predecessors in title to Kennedy, he used the new description from the Wallingford Fruit House attachment, *repeating* the disputed boundary call. At the same point in time, Peter Wallingford also conveyed the parcel formerly belonging to John G. and Eugene O. Wallingford, which had heretofore included the disputed triangle, to Ivan and Dorothy Wallingford. Rather than using the same attachment, he transcribed the descriptions found in the attachment, but properly omitted the description of the Starbird parcel from the list.

[¶ 12] The parties agreed at trial, as they now do on appeal, that the deed from Peter Wallingford to the Spragues controls this dispute.[6] The disputed boundary call reads, "thence running northwesterly on the York Road five hundred twenty-four (524) feet to land now or formerly of Timberlands, Inc." The Wallingfords argued that the reference to the York Road is to the road that the parties agree marked the boundary between the properties until 1987, resulting in the disputed triangle's inclusion in their property. Kennedy and Foss argued that the reference to the York

---

5. There is no evidence in the record to explain what appears to be the mistaken inclusion of the description of this piece of property that Wallingford Fruit House no longer owned in the deed to Peter Wallingford.

6. Although the deeds are not included in the record, it appears that the Spragues conveyed the property to one Renee Lavoie who in turn conveyed it to Land Tree, the immediate predecessor in title to Kennedy.

Road is to an old road bed running between two stone walls.

[¶ 13] After hearing testimony from both parties' experts and reviewing all the evidence, the trial court found that there was a latent ambiguity in the call in the 1987 Wallingford to Sprague deed regarding which route was meant by the reference to the "York Road," specifically noting that the course of the road had been changed in 1892 creating two possible routes for the reference to the "York Road." The court also noted that the reference to the York Road in the 1987 deed to the Spragues was in a different context than the previous reference to the York Road in the 1957 Bardier deed. The court found that the reference to another monument in the 1987 deed, i.e., the reference to the land of Timberlands, was equivocal because both routes ran to the land of Timberlands. The court then concluded that the distance reference in the boundary call assumed more importance and indicated that the reference to the York Road was meant to be to the old road bed between the stone walls as argued by Kennedy and Foss.

[¶ 14] The court found for Kennedy and Foss on all the claims against them, determining that the disputed triangle belonged to Kennedy. The court also found for the Wallingfords in the action brought against them by Land Tree. Only the Wallingfords appealed.

## II. THE DISPUTED BOUNDARY

[¶ 15] "The law is well established that the determination of the boundaries of property as ascertained from a deed is a question of law. Where the boundaries are on the face of the earth is a question of fact and the court's factual finding in that regard will not be disturbed unless clearly erroneous." *Lawton v. Richmond*, 1997 ME 34, ¶ 9, 690 A.2d 953, 955 (citing *Snyder v. Haagen*, 679 A.2d

510, 513 (Me.1996)); *see also Theriault v. Murray*, 588 A.2d 720, 721 (Me.1991). We look initially to the face of a deed for the controlling intent of the parties. *See Snyder*, 679 A.2d at 513. However, if facts extrinsic to the deed reveal a latent ambiguity,[7] we must resort to standard rules of construction and circumstances surrounding the drafting of the deed to resolve it. *See Lawton*, 1997 ME 34, ¶ 9, 690 A.2d at 955; *Snyder*, 679 A.2d at 513; *Theriault*, 588 A.2d at 722.

[¶ 16] It is clear from the face of the controlling deed in this case that the parties intended that the York Road mark a portion of the boundary between the two adjacent parcels of land. However, as the trial court noted, there were two possible routes for the road when the description was applied to the face of the earth. At the time the deed was drafted, there existed a woods road that had previously marked the boundary between the parcels when title to the two parcels rested in separate hands and an old road bed that ran between two stone walls. Consequently, we, like the trial court, must resort to the rules of construction regarding deeds, as well as surrounding circumstances, to divine the intent of the parties regarding which route marks the boundary.

[¶ 17] The trial court, relying on the rules of construction, determined that, the other evidence being equivocal, the distance call of 524 feet was dispositive for purposes of determining which route was meant by the reference to the York Road. The court then concluded that the call referred to the old road bed running between the stone walls, resulting in the disputed parcel of land belonging to Kennedy. This determination, however, is not supported by the evidence.

[¶ 18] Unless application of the standard rules of construction would yield

---

**7.** A latent ambiguity is "an uncertainty which does not appear on the face of the instrument, but which is shown to exist for the first time by matter outside the writing when an attempt is made to apply the language to the ground." *Slipp v. Stover*, 651 A.2d 824, 826 (Me.1994) (quoting 23 AM. JUR. 2D § 314 *Deeds* (1983)) (internal quotation marks omitted).

absurd results or results manifestly inconsistent with the intention of the parties to the deed, the rules require that boundaries be controlled in descending order of priority by monuments, courses, distances and quantity. *See Lawton,* 1997 ME 34, ¶ 9, 690 A.2d at 955 (citing *Perkins v. Graves,* 642 A.2d 1349, 1351 (Me.1994)). The one monument call other than the reference to the York Road, i.e., the reference to the land of the abutter, does not resolve the ambiguity because both routes run to the abutter's land. Therefore, the rules of construction indicate that the course call be the next call relied on.

[¶ 19] The trial court made no finding of fact regarding the course call of "northwesterly" in its decision. The Wallingfords, however, did not request findings of fact subsequent to the entry of the court's judgment. We are left to assume, therefore, that the court made an implicit finding regarding the course call that supports its decision.[8] *See Markley v. Semle,* 1998 ME 145, ¶ 4, 713 A.2d 945, 946–47. Because the court ultimately relied on the distance call to resolve the ambiguity in the deed, we must assume that the court found that both alternate routes ran "northwesterly" and then proceeded to the distance call to resolve the ambiguity in its application of the rules of construction. This finding, however, is not borne out by the evidence in the record.

■ [¶ 20] Generally, references to points of the compass in a boundary course call are considered to run to the point referenced. The *American Law of Property* indicates that courts have generally held:

[W]hen the course is given as running toward a point of the compass or at a stated variation from it, the point which must be held to have been intended, unless there is something in the description or elsewhere in the conveyance to indicate otherwise, is the true cardinal point.

III AMERICAN LAW OF PROPERTY § 12.105 at 411 (1952); *see also* 23 AM. JUR. 2D *Deeds* § 309 at 280 (1983) ("the words 'easterly,' 'westerly,' and the like, when used alone in the description of land, will be construed to mean 'due east,' 'due west,' and the like, unless other words are used to qualify their meaning"). We have noted previously, however, that the use of words such as "north" or "northerly" do not always mandate that a boundary run due north when adhering to the general rule would yield incongruous results. *See Milliken v. Buswell,* 313 A.2d 111, 115 (Me.1973); *see also Proctor v. Hinkley,* 462 A.2d 465, 472 (Me. 1983) (holding that call to go "east" meant "easterly" rather than "due east" when running boundary due east would result in absurd boundary inconsistent with other descriptions of property found in deed). We have also declined to hold that there is a legal presumption favoring the magnetic meridian over the true meridian and have, instead, treated the determination as one of fact to be made from the evidence in the record. *See Milliken,* 313 A.2d at 115; *see also* Herbert B. Chermside Jr., Annotation, *Boundaries: Description in Deed as Relating to Magnetic or True Meridian,* 70 A.L.R. 3D 1220, § 5 at 1228–29 (1976).

■ [¶ 21] The record evidence in this case reflects that the old road bed runs almost exactly due north using magnetic

---

8. During oral argument, the Wallingfords argued that a motion for findings of fact is not necessary when a court has entered findings of fact sufficient to allow for judicial review. *See also Sewall v. Saritvanich,* 1999 ME 46, ¶¶ 9–10, 726 A.2d 224, 226 (finding court did not abuse its discretion by denying Rule 52 motion where court made adequate findings of fact and conclusions of law in its original judgment). The Wallingfords also rely, however, on the lack of a finding of fact regarding the course call to support their argument that the court failed to consider course in its analysis. Kennedy and Foss argue alternately that the court implicitly found that both courses run northwesterly or that the court's failure to consider course is harmless error. This dispute could have been obviated by a motion for findings of fact pursuant to M.R. Civ. P. 52. In the absence of such, we are left to assumed findings.

north while the woods road runs north 45° 57' 45" west, almost exactly northwest, again using magnetic north. It would appear, then, that the boundary call "running northwesterly on the York Road" refers to the route following the woods road that runs almost exactly northwesterly, not the old road bed that runs almost due north, and that the magnetic meridian should be used in this case. We do not agree with the general argument of Kennedy and Foss that the course call "northwesterly" refers to a route running toward *any* point falling between the compass points north and west, and, as they specifically argue in this case, between true north and true west. Therefore, the trial court's implicit finding that both routes run northwesterly is not supported by the evidence. Rather, only the woods road runs northwesterly.

[¶ 22] Although the distance call of 524 feet is more consistent with the length of the old road bed,[9] we have previously observed in similar circumstances, "[b]y itself . . . the loss of length on one boundary is not an absurd result that is manifestly inconsistent with the parties' intentions as reflected in the provisions of [the] deed." *Snyder*, 679 A.2d at 513. Furthermore, according to the rules of construction, a course call in a deed controls over a distance call. *See Conary v. Perkins*, 464 A.2d 972, 975 (Me.1983). In *Conary*, we noted with regard to a surveyor whose survey was adopted by a court-appointed referee:

> It is apparent from his explanations at trial that when the application of this rule [that boundaries are established in descending order of control by monuments, courses, distances and quantity] brought about what he felt was an unacceptable variance from the stated dis-

tances in the deed, he would give preference to distances over monuments or courses. In this he was in error, and, by so doing . . . was proceeding on the assumption that the terms of the deed were incorrect and he in fact was reforming the . . . deed.

*Id.* at 976. We vacated the Superior Court's decision adopting the referee's report as a result. *See id.* Based on the rules of construction, alone, it would appear, then, that the trial court's placement of the York Road as following the old road bed as opposed to the woods road was error. In this case, however, we are not forced to rely on the rules of construction alone.

[¶ 23] As we noted above, when there is a latent ambiguity in a deed, we also look to the circumstances surrounding the drafting of the deed to resolve it. *See Lawton*, 1997 ME 34, ¶ 9, 690 A.2d at 955; *see also Slipp*, 651 A.2d at 825–27 (examining extrinsic evidence regarding parties' intent, including circumstances surrounding the drafting of the deed, in an action to reform the deed). Kennedy and Foss argue that, despite the fact that references to the York Road in deeds prior to the one at issue in this case referred to the woods road as the boundary between the two parcels of land, in 1987 Peter Wallingford not only intended to change the boundary between the two parcels, but also to change the route meant by the name "York Road." Again, the record evidence does not support this contention.

[¶ 24] Both parties acknowledge that, until 1987, the reference to "York Road" in the Bardier deed, and its incorporation by reference in other deeds, placed the York

9. The old road bed measured roughly 518 feet to a blaze line demarcating the boundary of the abutter's land while the woods road only measured 378 feet to the blaze line. However, there was also evidence in the record that the boundary with the abutter had been in dispute at the time the controlling deed was drafted. The woods road measured 526 feet to an old blaze line that the Wallingfords, as

well as their predecessor in title, John Wallingford, believed to mark the actual boundary with the abutter. This dispute, however, was resolved by the Wallingfords executing a quitclaim deed some time later to the abutter relinquishing their claim to the property running to the old blaze line and acknowledging the new blaze line as the proper boundary.

Road on the woods road. This had been the understanding of all the parties to those deeds, including Peter Wallingford, the *grantor* in the disputed deed. Additionally, the woods road had always marked the boundary between the two parcels when owned by separate owners. Although it is true that at the time of the drafting of the controlling deed in 1987, Peter Wallingford could have redrawn the boundary between the two parcels as the owner of both of them, Kennedy and Foss offer no argument to explain why he would use the descriptive term "York Road" to demarcate a *different* boundary from the one that the *same term* had previously described.

[¶ 25] Additionally, Peter Wallingford testified to the circumstances of the transfer of the properties, and he explained that the reason he acted as a conduit for the purchasers was because he had been the approved buyer by the bankruptcy court, but had not been able to acquire the necessary financing.[10] He was the owner of the abutting parcels for less than one day. It is unlikely that in that one day he would decide that one of the boundaries between the parcels needed to be changed.

[¶ 26] Lastly, the first appearance of the disputed description is not in the conveyance from Peter Wallingford to the Spragues but, rather, is in the attachment to the earlier deed from Wallingford Fruit House to Peter Wallingford (although at that time Wallingford Fruit House did not actually own the parcel). Because Wallingford Fruit House did not own both parcels at the time the description first appeared, it was not in a position to change the boundary between the two parcels of land by means of a new description. Therefore, the new description was likely

intended to describe the parcel as it had always been, with the boundary running along the woods road. The description then gets repeated by Peter Wallingford in his deed to the Spragues, the deed both parties agree controls this dispute. Again, although he did have unity of ownership of the two parcels at the time, this *repetition* of an *earlier* description does not appear to indicate an intention to *change* the boundary as argued by Kennedy and Foss.

■ [¶ 27] We have stated that we will affirm a trial court's finding of fact unless it is based on a clear misapprehension of the meaning of the evidence. *See Dowley v. Morency*, 1999 ME 137, ¶ 13, 737 A.2d 1061, 1066–67. The trial court, by placing the boundary call referring to the York Road along the old road bed, appears to have based its finding on a misapprehension of the meaning of the record evidence. The old road bed does not run northwesterly as described in the deed, while the woods road does. Additionally, the circumstances surrounding the drafting of the deed do not reflect an intent to either change the historical boundary between the two parcels of land, nor to change the route connoted by the description "York Road" from the woods road to the old road bed. We therefore vacate the trial court's decision.

The entry is:

Judgment vacated. Remanded for an entry of judgment consistent with this opinion and a determination of damages.

10. Contrary to the representations of counsel for Kennedy and Foss at oral argument, however, Peter Wallingford did *not* testify that he had gone out to the parcel and measured the length of the disputed boundary prior to the conveyance to the Spragues. Peter Wallingford did testify to visiting the parcel prior to the conveyance from Wallingford Fruit House to Starbird and indicated that, at that time, the boundary between the two parcels was the woods road. Counsel for Kennedy and Foss objected, however, to his testifying about his intent regarding the boundary at the time of the conveyance from himself to the Spragues.