STATE OF MAINE
HANCOCK, SS.

SUPERIOR COURT
CIVIL ACTION
Docket No. RE-01-7

Merrill E. Means et al.,
     Plaintiffs

v.

**Decision and Judgment**

John L. Bethune,
     Defendant

DONALD L. GARBRECHT
LAW LIBRARY

NOV 21 2002

Hearing on the complaint and counterclaim was held on August 27, 2002. The parties were present with counsel.

The parties are owners of abutting parcels of land located in Brooklin. Their parcels, and at least one other adjoining parcel, were formerly owned by Oscar Nicholson, who was the uncle of the defendant's wife. In late June 1969, Oscar conveyed a portion of his land to the defendant. *See* exhibit 22. Neither Oscar nor the defendant surveyed the parcel that was the subject of the outconveyance. The deed description identifies the northwesterly boundary of the conveyed premises by reference to the adjoining lot, known as the Flye lot. In the deed from Oscar to the defendant, the northwestern line is described as "[b]eginning at the southerly end of the Leola Flye gravel pit at an iron pipe driven in the ground at the northerly side line of the town road; thence northeasterly following the easterly line of said land of Leola Flye two hundred ninety-one (291) feet more or less, to an iron pipe at remaining land of the said Oscar M. Nicholson, the Grantor herein. . . ." In fact, the "easterly" (or, more precisely, the southeasterly) boundary of the Flye lot (which is the common boundary with the parcel that Oscar conveyed to the defendant) is 13 rods and 12 links, which is 222 feet.[1]

---

[1] Roughly one week after Oscar conveyed a portion of his land to the defendant, the owners of the Flye lot conveyed the Flye lot to the defendant. For purposes of reference,

1

The deed from Oscar then describes the northeasterly boundary of the conveyed premises to run 225 feet to an iron pipe, then southwesterly 285 feet to a pipe on the town road, and then back along the road to the first point.

By June 1987, Frances Nicholson had become the record owner of the land that Oscar had retained.[2] At that time, she conveyed that property to the plaintiffs. *See* plaintiffs' exhibit 27. The deed of conveyance describes the entire parcel that Oscar had originally owned and then excepts the several outconveyances – including the one to the defendant in June 1969 – that Oscar had transacted.

In this action, the parties dispute the location of the northeasterly and southwesterly boundaries of the defendant's parcel, which constitute the boundaries the parties have in common. Additionally, the plaintiffs have brought a statutory action for trespass. *See* 14 M.R.S.A. § 7551 *et seq.*

The location of a boundary on the face of the earth is a question of fact. *Hennessy v. Fairley*, 2002 ME 76, ¶ 21, 796 A.2d. 41, 48. To determine that location from a deed description, the court must determine the intent of the parties to that deed. *Id.* If the facts extrinsic to the deed description are affected by a latent ambiguity, then a parcel's boundaries are located by reference to monuments, courses, distances and quantity, in that priority. *Id.* A "latent ambiguity" is "an uncertainty which does not appear on the face of the instrument, but which is shown to exist for the first time by matter outside the writing when an attempt is made to apply the language to the ground." *Slipp v. Stover*, 651 A.2d 824, 826 (Me. 1983) (punctuation omitted). These standard rules of construction apply unless the result is "absurd . . . or . . . manifestly inconsistent with the intention of the parties to the deed . . . ." *Wallingford v. Kennedy*, 2000 ME 112, ¶ 18, 753 A.2d 493, 497-98.

"Monuments" are "visible marks or indications left on natural or other objects indicating the lines and boundaries of a survey. In this sense the term includes not only posts, pillars, stone markers, cairns, and the like, but also fixed natural objects, blazed

---

in this opinion references to "the defendant's property" means the parcel he received from Oscar.

[2] Frances was the wife of Oscar's son, Stanley. Both Oscar and Stanley had died prior to June 1987.

trees, and even a watercourse." BLACK'S LAW DICTIONARY 1159 (rev. 4th ed. 1969). An adjoining tract is a monument if it is identified as a boundary in the deed. *Snyder v. Haagen*, 679 A.2d 510, 514 (Me. 1996). ". . .[T]he physical disappearance of a monument terminates its status as a boundary marker unless its former location can be ascertained through extrinsic evidence." *Hennessy*, 2002 ME 76, ¶ 22, 796 A.2d at 48 (citation omitted).

The deed from Oscar to the defendant contains a latent ambiguity because, although that problem is not evident from the face of the deed itself, the length of northwesterly line as described in the deed is longer than the monument (i.e., the southeastly line of the Flye lot) that may be used to establish the location of the defendant's line.[3] The northwesterly line of the parcel that Oscar conveyed to the defendant cannot follow the common boundary of the Flye lot for 291 feet, because that line of the Flye lot is only 222 feet. If the ordinary priority of criteria were applied, then the northwesterly boundary of the defendant's parcel would be coextensive with the southeasterly line of the Flye lot, and thus it would be 222 feet in length rather than the 291 foot line urged by the defendant.

The controlling status of a monument would yield to other considerations if the result under the first approach were absurd or contraindicated by extrinsic evidence. Here, the result is not absurd. Further, it is not contrary to persuasive extrinsic evidence. The trial record contains conflicting evidence regarding Oscar's intentions. On the one hand, the defendant and his wife testified that they accompanied Oscar as he walked the lines of the parcel that, they claim, he intended to convey to the defendant in 1969. On the other hand, an equally interested witness – plaintiff Merrill Means – testified that Oscar expressed an intention not to convey his blueberry land to the defendant. Because the disputed area largely consists of blueberry fields, this is probative evidence that Oscar did not intend to convey the land that the defendant claims here. Significantly, well into the 1980's, Oscar and later Stanley, through a third party (David Webb), continued to harvest blueberries on the land that the defendant argues was conveyed to him. Finally,

---

[3] The deed description makes reference to a pin at the end of the northwesterly line farthest from the road. That pin could not be found. The defendant's surveyor set a pin where he (and the defendant) believes the terminus is located.

the overstated measurement found in the deed is explained through evidence that Oscar had difficulty securing accurate measurements of land that he transferred through outconveyances. For example, Oscar conveyed a separate section of his land to a third-party, and the evidence demonstrates that the measurements used by Oscar in the deed description were incorrect by as much as 100 feet. Consequently, the probative force that otherwise might accompany evidence of a specific measurement is largely lost here. Therefore, the evidence in this case does not warrant a rejection of the well-established rules of construction because, at the very least, the evidence fails to demonstrate that Oscar intended to convey the disputed property claimed here by the defendant. Therefore, the court finds that the northwest boundary of the defendant's property does not extend beyond the southeast boundary of the Flye lot.

The parties also dispute the length of the northeasterly boundary of the defendant's property. As is noted above, the deed description consists of a 225 foot distance call and a reference to a pipe. A pipe is located roughly 142 feet from the northwest corner of the defendant's lot. That pipe is nearly on line with an extension of the back line of the Flye lot. The parties presented conflicting testimony on the question of where the pipe was located in and around 1969. However, the evidence also includes the testimony of a more disinterested witness (Webb), who managed the blueberry fields owned by Oscar and later by Stanley between the mid-1960's and the mid-1980's. Because of his work in the fields that are central to this case, he would be particularly knowledgeable about the location of pins in the fields. Thus, the court accepts his testimony that during the time he worked those fields, there were several pipes that were located at the edge of the blueberry fields. Because the blueberry fields were managed and harvested prior to the 1969 conveyance, the presence of the pipes prior to that conveyance would have had no apparent purpose if they were in the middle of the field. On the other hand, they would serve a purpose if they were placed at the edge of the harvestable area, which is where Webb said they were located. Even if they served the original purpose of merely marking the field (as the defendant argues), they would become a convenient reference point when Oscar delineated the boundaries of the 1969 outconveyance.

Webb's testimony is consistent with evidence that there was a pipe at the point where the plaintiff contends the northeast corner of the defendant's parcel is located. It is inconsistent with the defendant's position that his parcel extends into the blueberry field by roughly 80 feet. The defendant again also argues that the specificity in the distance call is better evidence of the length of the northeasterly line. However, for the reasons noted above, that evidence does not carry the weight here that it might in a case where a grantor does not have a proven track record of inaccurate land-distance measurements.[4]

In sum, although the evidence in this case is not always capable of easy reconciliation, based on the best available evidence construed within the framework of the legal principles noted above, the court finds that the boundaries of the defendant's property are as set out in plaintiff's exhibit 1.

The plaintiff has brought a separate statutory claim for damages based on trespass. In the late 1980's, the plaintiff planted three trees along the road in the area that is disputed by the parties in this action. That area alongside the road is grassy and generally not maintained. The plaintiff had transplanted those trees from the woods but had cared for them by watering them. In 1998, the defendant cut down those trees. That act was in violation of the provisions of 14 M.R.S.A. § 7552(2). This leads to the question of damages under section 7552(3) and (4). The defendant knew no later than June 1997 that title to that area was in question, because at that time he arranged to have a survey made of the property. However, the nature of the evidence in this case demonstrates that there has been a genuine issue regarding ownership of the disputed area. Because of this, the court cannot find that the defendant acted "intentionally or knowingly" in violation of the plaintiff's property interests, within the meaning of 14 M.R.S.A. 7552(4)(B), when he cut the trees. Because the plaintiff has presented no

---

[4] At one point in his testimony, the harvester testified that he saw a pipe close to a gravel road that entered the blueberry field from the town road. The gravel road is some distance from the edge of the blueberry field. *See* plaintiff's exhibit 3A. Because the witness also testified that the several pipes that he described marked the edge of the blueberry field, the court does not find that any pipe near the road marks the southeast corner of the defendant's lot.

evidence of his actual damages, the defendant is therefore liable only for the minimum amount of damages, namely $250. *See* 14 M.R.S.A. § 7552(4)(A).[5]

The entry shall be:

For the foregoing reasons, judgment is entered for the plaintiff on the complaint and counterclaim. The common boundaries of the parties' real property located in Brooklin, Maine are as set out in plaintiffs' exhibit 1 (the survey of Sage Collins, Inc. last revised on August 18, 1999), which is incorporated by reference herein.

Further, the plaintiff is awarded damages of $250, plus interest and costs of court.

Dated: November 12, 2002

_____
Justice Maine Superior Court

**FILED &
ENTERED**

**NOV 1 4 2002**

**SUPERIOR COURT
HANCOCK COUNTY**

---

[5] In his complaint, the plaintiffs seek an award based on "professional services" as defined in section 7552(1)(E). On the present record, the plaintiffs are not entitled to recovery based on "professional services," aside from costs that are routinely awarded to a prevailing party under 14 M.R.S.A. § 1502-B *et seq.* The other "professional service" revealed by this record is the surveying work conducted by the plaintiffs' expert and attorney's fees. Reimbursement for that expense would be allowed only if the defendant had actual or constructive knowledge that the plaintiffs were asserting a claim. 14 M.R.S.A. § 7552(5). Here, the survey work was prepared in 1999, which is several years prior to the time the plaintiffs commenced this action. There is no evidence that in 1999 the defendant knew or should have known that the plaintiffs were asserting the claims made here. The only evidence that the defendant was aware that the plaintiffs were asserting a claim is that he was served with process in this case. The plaintiffs have not argued in a meaningful way (that is, in a form that would permit a response from the defendant) that the commencement of an action satisfies the notice requirement of section 7552(5). Thus, the court treats the issue as waived. In any event, the amount of any recovery for professional services would be limited to half of the award of damages plus interest. *Id.* Here, recovery for the former therefore would be nearly nominal.

6