2006 ME 129

**David LLOYD et al.**

v.

**Peter BENSON III et al.**

Supreme Judicial Court of Maine.

Argued: April 10, 2006.
Decided: Nov. 14, 2006.

William B. Devoe (orally), Peter D. Klein, Eaton Peabody, Bangor, for plaintiffs.

Peter R. Roy (orally), Robert W. Laffin Jr., Roy, Beardsley, Williams & Granger, LLC, Ellsworth, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

LEVY, J.

[¶ 1] David and Vickie Lloyd appeal the entry of a judgment in the Superior Court (Hancock County, *Hjelm, J.*) resolving a boundary dispute in favor of Peter Benson III and Susan Rand, the owners of an abutting parcel. The Lloyds contend that the trial court erred in ruling that the deed to their parcel contained a latent ambiguity and in the manner in which it resolved the ambiguity. We affirm the judgment.

## I. BACKGROUND

[¶ 2] Annabelle Robbins conveyed a parcel of land in Southwest Harbor to the Lloyds in January 2000. The deed included an acknowledgement by Robbins "that portions of an abutting property owner's house and septic system encroach upon the northwesterly portion of the herein conveyed premises." The encroachment, and the boundary line dispute it has generated, stem from a 1959 deed in the chain of title, in which Peter and G. Katherine Benson, the parents of the defendant, Peter Benson III, created the parcel from their existing property and conveyed it to Robert and Frances Perschel. The Bensons employed surveyor Robert Raynes to prepare a sketch of the parcel and place iron pipes in the ground. In Raynes's sketch and the Bensons' deed to the Perschels, the northeast boundary of the parcel was depicted as beginning at a point on State Highway Route 102A and running a distance of 1270 feet to an iron pipe. The boundary was described in the deed as follows: "North

sixty-three degrees and thirty minutes West (N. 63° 30′ W.) and always following the Southerly line of land belonging to Peter Benson, twelve hundred seventy feet (1270′) to an iron pipe driven in the ground."

[¶ 3] The parties agree that currently there is no iron pipe at the 1270–foot mark. However, the Lloyds contend that there was once a pipe in this location and that it was replaced by a residence constructed by Rand in 1990. Rand and Benson assert that the actual terminus of the northeast boundary is at an existing iron pipe located at 1070 feet. If the terminus of the boundary is 1270 feet, Rand's residence encroaches on the Lloyds' property; if the terminus of the boundary is 1070 feet, there is no encroachment.

[¶ 4] The Lloyds filed a complaint against Rand and Benson in the Superior Court alleging trespass, slander of title, removal of a monument, and unlawful timber cutting. Rand and Benson answered and filed a counterclaim seeking a declaratory judgment regarding the location of the boundary and asserting ownership of the disputed area through adverse possession. After a two-day trial, the Superior Court issued a written decision in which it determined that the description in the Lloyds' chain of title of the iron pipe as being at 1270 feet was incorrect and that the true distance is actually 1070 feet. The court premised its analysis on the principle that "[i]f the facts extrinsic [to] the deed generate a latent ambiguity in the deed description, then a parcel's boundaries are located by reference to monuments, courses, distances and quantity, in that priority." The court determined that the deeds in the Lloyds' chain of title contained a latent ambiguity because there was no existing metal pipe at 1270 feet:

The deed describes Lloyd's northeast boundary in the following way: "... thence North sixty-three degrees and thirty minutes West (N. 63° 30′ [W].) and always following the Southerly line of land belonging to Peter Benson, twelve hundred seventy feet (1270′) to an iron pipe driven in the ground; ...."

*.... A metal pipe is located 1,070 feet from the beginning point of that line, and there is no metal pipe 1,270 feet from that point. This creates a latent ambiguity in the deed, requiring resort to the analytical principles noted above.* Ultimately, through both an application of the boundary determination priorities noted above and consideration of the extrinsic evidence as a whole, the court finds that the length of Lloyd's northeasterly line is 1,070 feet and that Rand owns the disputed land.

(Emphasis added.)

[¶ 5] Having found that the there was a latent ambiguity in the description of the northeast boundary of the Lloyds' property, the court invoked the rule of deed construction that treats a monument as taking priority over courses, distances, and quantity to conclude that: "The very presence of the iron pipe at its location 1,070 feet from the easterly corner of the lot is, under the priority formulation, entitled to significant probative weight, particularly in comparison with a distance call, which is third on the priority list."

[¶ 6] The remainder of the court's decision contains a detailed analysis of the parties' competing parol evidence regarding Peter and G. Katherine Bensons' intent with regard to the northeastern boundary of the parcel when they conveyed it to the Perschels in 1959. The court ultimately accepted Rand and Benson's position that at the time Peter and G. Katherine Benson created the lot from their existing property, Peter Benson had

directed Raynes to place an iron pipe in the ground at the point that was 1070 feet from the road, but that Raynes had mistakenly described the pipe he had installed as being at 1270 feet from the road in the deed description he prepared for the Bensons' deed to the Perschels. The court's judgment reformed the Lloyds' deed to resolve the latent ambiguity by shortening the northeasterly and southeasterly boundaries of the Lloyds' parcel by 200 feet. This appeal followed.

## II. ANALYSIS

[¶ 7] The Lloyds contend that the court erred when it concluded as a matter of law that the absence of an iron pipe at 1270 feet establishes a latent ambiguity, and that the court should have considered evidence that an iron pipe had previously existed at 1270 feet.

[¶ 8] The interpretation of a deed and the intent of the parties who created it, including whether the deed contains an ambiguity, are questions of law, which we review de novo. *See Wallingford v. Kennedy,* 2000 ME 112, ¶ 15, 753 A.2d 493, 497; *Snyder v. Haagen,* 679 A.2d 510, 513 (Me.1996). A deed contains a latent ambiguity if it appears sound on its face, but actually contains conflicts or errors when the terms are applied to the land described. *Hennessy v. Fairley,* 2002 ME 76, ¶ 21, 796 A.2d 41, 48; *Wallingford,* 2000 ME 112, ¶ 15 n. 7, 753 A.2d at 497.

[¶ 9] The court determined that the Lloyds' deed suffers from a latent ambiguity because no iron pipe is currently found at the 1270–foot terminus of the northeastern boundary of their property. This conclusion led the court to evaluate the parol

evidence submitted by the parties regarding whether the iron pipe was intended to be at 1270 feet or 1070 feet at the time of the parcel's creation in 1959.

[¶ 10] When a monument referenced in a deed is missing, it does not lose its significance as a monument if its original location can be determined. We have previously expressed this principle in both positive and negative terms. For example, in *Theriault v. Murray,* 588 A.2d 720, 722 (Me.1991), we stated: "The physical disappearance of a monument does not end its use in defining a boundary if its former location can be ascertained." In contrast, in *Milligan v. Milligan,* 624 A.2d 474, 478 (Me.1993), we stated, "[t]he physical disappearance of a monument terminates its status as a boundary marker *unless* its former location can be ascertained through extrinsic evidence." (Emphasis added.) We concluded in *Milligan* that "[b]ecause the unrebutted testimony in this case was that no pin ... was ever located at [the terminus described in the deed], the pin could no longer be considered a monument." *Id.*

[¶ 11] Regardless of whether expressed in the positive or negative, the principle remains the same: The location of a monument that is described in a deed, but is missing from the face of the earth, can be established through extrinsic evidence. *See Hennessy,* 2002 ME 76, ¶ 22, 796 A.2d at 48. Once so established, the monument has the same legal significance as if it were not missing. *Theriault,* 588 A.2d at 722 (stating that if the locations of missing monuments can be determined, the "monuments as a matter of law must prevail over the deed's course and distance calls").[1]

1. In *Theriault v. Murray,* the deed at issue described a boundary by reference to two stakes driven into the ground that were physically missing. 588 A.2d 720, 721 (Me.1991).

We stated that "[t]he court has a duty to determine, if possible, the original locations of these stakes on the face of the earth." *Id.* at 722. We remanded the case for the trial

[¶ 12] Therefore, before a court determines that an otherwise unambiguous deed contains a latent ambiguity because a monument described in the deed is currently missing, it must first determine whether the evidence establishes that the monument, though missing, previously existed at the location described by the deed. If the court concludes that the monument previously existed at the location described in the deed, the deed does not contain a latent ambiguity and the court should not look beyond the deed to evaluate the intent of its drafter. The burden of proof to establish the prior existence of a missing monument rests with the party asserting its prior existence. *See Theriault*, 588 A.2d at 722.

[¶ 13] If the court determines that a monument did not previously exist at the location described in the deed, there is a latent ambiguity and the court may consider parol evidence and apply the standard rules of deed construction:

> Unless application of the standard rules of construction would yield absurd results or results manifestly inconsistent with the intention of the parties to the deed, the rules require that boundaries be controlled in descending order or priority by monuments, courses, distances and quantity.

*Hennessy*, 2002 ME 76, ¶ 21, 796 A.2d at 48 (quoting *Wallingford*, 2000 ME 112, ¶ 18, 753 A.2d at 497–98). The rules of construction should be applied beginning with the overarching goal of giving effect to the intent of the parties. *See Kinney v. Cent. Me. Power Co.*, 403 A.2d 346, 349 (Me.1979); *Pike v. Munroe*, 36 Me. 309,

315 (1853) (stating that "the more sensible rule of construction . . . is in all cases to give effect to the intention of the parties if practicable"); *see also* 14 RICHARD R. POWELL, POWELL ON REAL PROPERTY § 81A.05[3][a] (Michael Allan Wolf ed., 2005).

[¶ 14] In this case, the Lloyds introduced extrinsic evidence that established that an iron pipe was physically present at a point 1270 feet from Route 102A on the northeast boundary as described in the Lloyds' chain of title. An iron pipe was depicted as physically present in both the 1959 sketch plan and the 1978 survey. Moreover, the Lloyds' expert witness, surveyor Edward Jackson, was a member of the field crew that prepared the 1978 survey, and he testified that an iron pipe was physically present at 1270 feet when he participated in the field work.

[¶ 15] The court concluded that because "there is no metal pipe 1,270 feet" from the beginning point of the boundary line, "[t]his creates a latent ambiguity in the deed." This legal conclusion is in error because it equates a missing monument with a latent ambiguity without considering whether extrinsic evidence establishes that the missing monument described in the deed previously existed. However, for the reasons that follow, the court's failure to expressly determine whether an iron pipe was ever present at the 1270–foot mark before concluding that the deed suffers from a latent ambiguity does not undermine the court's ultimate conclusion that the northeastern boundary terminates at 1070 feet. Any error was, therefore, harmless.

court to receive "evidence relative to the plaintiffs' burden of proving the original location of the monuments." *Id.* In contrast, in *Hennessy v. Fairley*, we found no error in a referee's decision to disregard a boundary description in a deed where the monuments used to describe the beginning point of the boundary—stakes and stones—were missing, and "no extrinsic evidence was presented to establish their location." 2002 ME 76, ¶¶ 22, 23, 796 A.2d 41, 48–49.

[¶ 16] Based upon the record evidence and the trial court's detailed evaluation of that evidence in its written decision, we infer that the court would have found that an iron pipe was never present at the 1270–foot mark if it had been requested to address the issue through additional findings of fact pursuant to M.R. Civ. P. 52(b). *See Glidden v. Belden*, 684 A.2d 1306, 1319 (Me.1996) ("When no relevant findings of fact are made, it is assumed on appeal that the court found for the prevailing party on all factual issues necessarily involved in the decision.... Such assumed findings will not be set aside unless clearly erroneous."); *see also In re Zoe M.*, 2004 ME 94, ¶ 10, 853 A.2d 762, 766 (stating that in the absence of a request for additional findings pursuant to Rule 52(b), it is assumed that the trial court made all of the findings necessary to support its decision). In its decision, the court credited the testimony of Peter Benson III, who assisted surveyor Raynes at the property in 1959.[2] Benson testified that the iron pipe that is currently at 1070 feet is the same iron pipe that was installed in 1959 and described in the chain of title as being at 1270 feet. In addition, although the court did not specifically address surveyor Jackson's testimony that an iron pipe was physically present at 1270 feet in 1978, the court's decision contains an evaluation of Jackson's expert opinion to the same effect and the reasons why the court found the opinion unpersuasive.

[¶ 17] From the detailed evaluation of the evidence in the court's decision, it is clear the court ultimately did not believe that a pipe was ever placed at 1270 feet. Because the court affirmatively found that the iron pipe at 1070 feet is the iron pipe described in the chain of title as being at 1270 feet, we infer from the record that, if it had been asked, the court would have expressly found that there was never an iron pipe at 1270 feet, and that such a finding is supported by competent evidence and is not clearly erroneous. We are not persuaded by and do not separately address the Lloyds' remaining contentions.

The entry is:

Judgment affirmed.

---

2. In addition to its application of the boundary determination priorities and Benson's testimony regarding the assistance he provided surveyor Raynes in 1959, the court cited two further reasons for its conclusion that the iron pipe at 1070 feet is the monument described in the chain of title as being at 1270 feet. First, the court noted that the current distance and relationship of the iron pipe at 1070 feet to the remains of a barbed wire fence that is north of the Lloyds' parcel is nearly identical to the depiction of the iron pipe at 1270 feet and a barbed wire fence in Raynes's 1959 sketch plan. Second, the iron pipe at 1070 feet is consistent in appearance with one that Raynes would have used, and was typical of pipes used by surveyors at the time. As the Lloyds correctly contend, this latter finding was clearly erroneous because the only testimony regarding the source of the iron pipe came from Benson, who testified that he, not Raynes, furnished the iron pipe because Raynes had not brought a pipe with him to the property. We find this error inconsequential in view of the court's independent findings that support its conclusion.