STATE OF MAINE                          SUPERIOR COURT
PENOBSCOT, SS.                          CIVIL ACTION
                                        Docket No. RE-05-56

FILED & ENTERED
SUPERIOR COURT

DEC 2 0 2007

PENOBSCOT COUNTY

John H. LeClair, Jr. et al.,
        Plaintiffs


        v.

                                        Decision and Judgment
Barbara C. Bloodsworth,                 (Title to Real Estate Involved)
        Defendant


                                        DONALD L. GARBRECHT
                                        LAW LIBRARY

                                        JAN 25 2008
        and


Mechanics Savings Bank,
        Party-in-Interest



        Trial on the complaint and counterclaim was held on July 10 and 11, 2006. On
both hearing dates, plaintiff John H. LeClair was present with counsel for both plaintiffs;
defendant Barbara C. Bloodsworth appeared with counsel; and party-in-interest
Mechanics Savings Bank appeared through counsel. Due to time constraints, the parties
were unable to fully present their evidence in court. Therefore, after the trial was
recessed on July 11, the parties developed the testimony of two additional witnesses
(including Bloodsworth herself) and filed transcripts with the court. Further, the parties
filed written arguments. The court has considered all of the evidence, including the
transcribed testimony of the two witnesses noted above,[1] as well as the summations of
counsel.

        The dispositive issue in this case is the location of the boundary between the
parcel of land owned by John H. LeClair and Melissa A. LeClair (collectively, "LeClair")

---

[1] The court notes that pages 10 and 11 are missing from the original transcript of Michael
Mitchell's testimony. None of the parties made reference to those pages, and so the court
infers that it has not missed anything of consequence.

1

and Bloodsworth's abutting parcel.[2] Their common boundary has an east-west orientation. Bloodsworth's parcel is located immediately to the north of LeClair's. Until 1979, these parcels had been portions of a much larger parcel of land owned by James D. Taylor and Medwin L. Taylor. In that year, the Taylors conveyed a portion of their land to Arthur O. Birth and Ida Birth. *See* joint exhibit 1. The deed of conveyance included a metes-and-bounds description of the parcel the Taylors purported to convey. Because the new parcel was landlocked, the instrument then also granted to the Births a right of way. That grant provided:

> There is also granted herewith to the Grantees herein, their heirs and assigns, a right of way for purposes of ingress and egress along a road as it now exists lying adjacent to and northerly of the northerly bound of the aforementioned parcel of land. The right of way extends from the Bennoch Road to the northeasterly corner of the aforementioned parcel of land, which right of way shall be used in common with the Grantors, their heirs and assigns.

*Id.* LeClair now owns the land that the Births acquired through this outconveyance. *See* joint exhibits 4, 6. The portion of the Taylors' land that they retained was the subject of several subsequent transactions. One of the Taylors' successors in interest created a set of smaller lots from the larger parcel. Bloodsworth ultimately acquired one of those smaller lots, which is nearly 9 acres in size. *See* joint exhibit 12. The location of the contested boundary, wherever it may be, has not been modified or otherwise changed in any of the conveyances that ultimately resulted in the parties' present interests.

There in fact exists a road that runs at or near the northerly boundary of the property that the Taylors conveyed to the Births. Locally, it had been described simply as a farm road but more recently (through the implementation of the Emergency 911 system) has been named Pine Grove Lane. The way is in the same location today as it was in 1979 and, in fact, well prior to Taylor-Birth transaction.

During the trial, the parties presented the testimony of two surveyors. Either directly or indirectly, both surveyors expressed the opinion that on the face of the earth, the location of the parties' common boundary (that is, the location of the northern line of the LeClair land and the location of the southern line of the Bloodsworth land), as

---

[2] Party-in-interest Mechanics Savings Bank was joined as a participant in this action because it holds an interest in Bloodsworth's property by virtue of a mortgage deed. Its interests are fully aligned with Bloodsworth's.

described in the metes-and-bounds portion of the deed's record description, is not on the southerly boundary of Pine Grove Lane. Rather, based on the best efforts to locate the relevant boundary based on the metes-and-bounds description, the road ends up as much as fifty feet to its south – in other words, well within the boundaries of the land that the Births acquired from the Taylors and that LeClair now owns.[3] This means that the deed is affected by a latent ambiguity, because uncertainty about its terms arise when one tries to establish, on the face of the earth, the location as described in the deed. *Wallingford v. Kennedy*, 200 ME 112, ¶ 15 n.7, 753 A.2d 493, 497 n.7 ("A latent ambiguity is an uncertainty which does not appear on the face of the instrument, but which is shown to exist for the first time by matter outside the writing when an attempt is made to apply the language to the ground. (Internal quotation marks omitted.)"). To resolve this latent ambiguity, the court then

> may consider parol evidence and apply the standard rules of deed construction:

>> Unless application of the standard rules of construction would yield absurd results or results manifestly inconsistent with the intention of the parties to the deed, the rules require that boundaries be controlled in descending order or priority by monuments, courses, distances and quantity.

>> . . .The rules of construction should be applied beginning with the overall goal of giving effect to the intent of the parties.

*Lloyd v. Benson*, 2006 ME 129, ¶ 13, 910 A.2d 1048, 1052 (citations omitted). In applying these familiar principles to the facts on this case, the court concludes that the boundary between the LeClair and Bloodsworth parcels is located on the southerly side of Pine Grove Lane, as Bloodsworth essentially contends.

This ultimate conclusion has several bases. First, through the process established in M.R.Civ.P. 36, LeClair has admitted that when the Taylors conveyed land to the Births in 1979, thereby creating the LeClair parcel, "those parties [the Taylors and the Births] understood that Pine Grove Lane was on land retained by the Taylors and was northerly

---

[3] If so, then because Bloodsworth's parcel is landlocked, there would arise the question of whether she is entitled to an easement that would allow her access from Pine Grove Lane, proceeding across the northernmost portion of the LeClair parcel, to her land. Because the court concludes that Pine Grove Lane is actually on Bloodsworth's property, there is no reason to consider the question of an easement from the way to her land.

3

and adjacent to the land conveyed by Taylor to Birth." Pursuant to rule 36(b), LeClair is deemed to have conclusively admitted this factual proposition. This proposition dispositively defeats LeClair's contrary contention that Pine Grove Lane is located within his parcel and does not extend onto Bloodsworth's land. As is noted above, the ultimate touchstone invoked to clarify a latent ambiguity is the intention of the parties to the conveyance. If the Taylors and the Births understood and knew that Pine Grove Lane was both adjacent to the parcel conveyed to the Births and northerly of the Birth parcel, then they could only have intended that the Birth parcel would not contain Pine Grove Lane and, instead, that it would be part of the land that the Taylors reserved to themselves. The conclusive and definitive nature of this admission, by itself, disposes of LeClair's arguments because it establishes Bloodsworth's contention, embodied in the request for admission, that the parties to the 1979 transaction intended the southerly edge of the way to serve as their common boundary line.

This conclusion is supported by extrinsic evidence of the parties' then-existing intentions. Most importantly, the express purpose of the easement over the way was to provide the Births with access to their newly created, landlocked parcel. As described in the deed, the right-of-way extended from the Bennoch Road, which is located to the west of the conveyed parcel, to the northeasterly corner of that parcel. This means that the right-of-way extended across the full northerly width of the Birth lot. If the way were located on the Birth parcel, as LeClair urges here, there would be no reason for the Taylors to have created the easement in the first place, because the land under the way would have been acquired by the Births: the Births would not need a right of way that would allow them to pass over land they already owned. Further, if the way ran generally south of the Births' northerly boundary, then the Taylors also would not have had any reason to extend the right-of-way all the way to the easterly boundary of the Birth parcel. Rather, the goal of creating access would be achieved if the Births were granted the right to use the way only to the point where the way crossed onto their new parcel. And then from that point, as is noted above, the express grant would become meaningless because, based on LeClair's argument, the Births would already own the land under the way.

The same result obtains when the issue is considered based on the Taylors' interest. The deed they delivered to the Births did not reserve to themselves any right to

4

use the way. If, as LeClair argues, the road runs across his land (i.e., the Births'), then the Taylors would not have held any right to use the road. The road was the only existing access to the land that was located directly east of the land conveyed to the Births, which the Taylors retained. If LeClair were correct, this would mean that the Taylors surrendered to the Births the best means to gain access to a large portion of their remaining land. The court finds that this is unlikely.

In 1985, nearly six years after the original conveyance, Ida Birth (now a widow and the sole owner of the parcel she and her husband had acquired in 1979) executed an instrument granting the Taylors a right-of-way over the farm road. *See* joint exhibit 2. In that instrument, Birth "acknowledged that said road does not precisely follow the boundary between the Birth and Taylor land, and may in part be located on the land of Taylor." *Id.* This expression is inconsistent with the terms of the original conveyance, where the parties stated expressly that the way in fact constituted the boundary between their properties. This document does not undermine Bloodsworth's position. The parties' surveyors agree – and the parties do not dispute – that the 1985 instrument does not purport to change the location of the boundary at issue. Consequently, the location of that boundary was established entirely pursuant to the 1979 deed. And for the reasons discussed above, the evidence demonstrates persuasively – and, in light of LeClair's rule 36 admission, it demonstrates conclusively -- that the Taylors and the Births intended to place that boundary on the southern edge of the way. An "acknowledgement" in 1985 that the boundary may be in a different location does not change that fact.

Any significance that might be attached to the 1985 "acknowledgement" is further weakened by a 1987 deed executed by Ida Birth, conveying her land to one David Conroe. *See* joint exhibit 3. In that deed, Birth also conveyed her rights in the easement over the way. She described the location of the way in the manner it was described in the 1979 deed from the Taylors to the Births: the road "now exists lying adjacent to and northerly of the northerly bound of the aforementioned parcel of land." *Id.* Therefore, if the 1985 "acknowledgement" is viewed as evidence that Birth did not regard the southerly edge of the way as the northern boundary of the parcel she and her late husband acquired in 1979, then the subsequent deed from 1987 can only be seen as a ratification

5

of the 1979 description, because it is inconsistent with the terms of the 1985 instrument on which LeClair relies.[4]

LeClair also argues that the metes-and-bounds description of the land as set out in the 1979 deed establishes that Pine Grove Lane is fully within his boundaries, despite the language in that deed expressly providing that the way abuts the parcel he now owns. For several reasons, the court does not find this argument to be persuasive. First, the express description of the location of the way relative to the Births' northern boundary constitutes a more straightforward and foolproof way to describe that boundary location, compared to a metes-and-bounds format. It is, in other words, a more clear and direct way for the parties to have expressed the their intentions.

Second, primary reliance on the reference to the way is more faithful to the priority that must be allocated among forms of descriptions, as that priority has been established in Maine caselaw. The way is a monument, which is a feature of a record description that is entitled to the highest level of priority. *See Lloyd*, 2006 ME 129, ¶ 13, 910 A.2d at 1052. The metes-and-bounds description includes some references to monuments. However, it also places critical reliance on other descriptive forms that receive less weight under the priority scheme: it is wholly dependent on distance calls and courses, without which the description as a whole would be useless. Thus, the weight to be given to the metes-and-bounds description is compromised by these elements.

Finally, application of the metes-and-bounds description to the face of the earth is not free of problems. As the plaintiffs' surveyor noted, the boundaries do not close when the terms of this description are used. Further, some of the monuments are missing, resulting in even more reliance on the distances and courses cited in the description, and in turn the metes-and-bounds description loses even more probative ground to the purely monumental reference based on the road.

---

[4] It bears note that in a utility easement that Conroe granted in 1988, he also described the location of the northern line of his property (now LeClair's) as the southern edge of the road. *See* joint exhibit 27.

For these reasons, the court concludes that the metes-and-bounds description of the land now owned by LeClair must yield to the record description that the southern edge of Pine Grove Lane constitutes the northern boundary of his property.

The remaining issue in the case is whether Bloodsworth had acquired an easement that would allow her access to her property from Pine Grove Lane. This issue, however, arises only if she were required to pass over LeClair's property to get from the way to her own property. This issue is now moot because the court has concluded that Pine Grove Lane is located on Bloodsworth's land. The court therefore does not address questions concerning an easement that would run in favor of Bloodsworth.

The entry shall be:

On the complaint, judgment is entered for the defendant.

On count 1 of the counterclaim, judgment is entered for the defendant (counterclaim plaintiff). The common boundary of abutting parcels of land owned by the plaintiffs (counterclaim defendants), described in a deed recorded at book 8946 page 331 in the Penobscot County Registry of Deeds, and land owned by the defendant (counterclaim plaintiff), described in a deed recorded at book 9472 page 249 in the Penobscot County Registry of Deeds, is the southern edge of Pine Grove Lane.

Counts 2 and 3 of the counterclaim are dismissed as moot.

The defendant and party-in-interest Mechanic Savings Bank are awarded their costs of court.

Dated: December 20, 2007

Justice, Maine Superior Court
Jeffrey L. Hjelm

12/21/2007         MAINE JUDICIAL INFORMATION SYSTEM        ksmith
                 PENOBSCOT COUNTY SUPERIOR COURT        mjxxi013
                 PAGE A - ATTORNEY BY CASE VIEW

JOHN H LECLAIR JR ET AL VS BARBARA C BLOODWORTH ET AL
UTN:AOCSsr  -2005-0089098              CASE #:BANSC-RE-2005-00056

---

| SEL VD | REPRESENTATION TYPE | | DATE |
|---|---|---|---|
| 01 0000000234 ATTORNEY:BEAUPAIN, DEAN | | | |
| F FOR:MECHANICS SAVINGS BANK JOINED | PII | RTND | 04/25/2006 |
| 02 0000002051 ATTORNEY:HAENN, MICHAEL S | | | |
| F FOR:MECHANICS SAVINGS BANK JOINED | PII | RTND | 03/07/2006 |

| SEL VD | REPRESENTATION TYPE | | DATE |
|---|---|---|---|
| 03 0000002094 ATTORNEY:RUSSELL, EDWARD C | | | |
| F FOR:MELISSA A LECLAIR | PL | RTND | 09/02/2005 |
| 04 0000001663 ATTORNEY:WOODCOCK, TIMOTHY | | | |
| F FOR:BARBARA C BLOODWORTH | DEF | RTND | 09/19/2005 |
| 05 0000009718 ATTORNEY:CANDERS, JOHN F | | | |
| F FOR:BARBARA C BLOODWORTH | DEF | RTND | 09/19/2005 |

Enter Option: A=Add, B+Sel=Browse, M=More, R+Sel=RltnEdit:

Select the EXIT KEY for page selection line.