STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
RE-11-472
JAW-CUM- 4/5/2012

BERNARD W. TUFTS and
JUDITH J. TUFTS,
      Plaintiffs

v.

JOINDER ORDER

NORMAN G. CHAMBERLAIN II,
TAHLIA CHAMBERLAIN,
MORTGAGE ELECTRONIC
REGISTRATION SYSTEM (MERS),
And TD BANKNORTH, N.A.,
      Defendants

STATE OF MAINE
Cumberland ss Clerk's Office

APR 05 2012

RECEIVED

This case is set for hearing on the Defendants' (Norman G. and Tahlia

Chamberlain) Motion for Joinder. The Plaintiffs have requested a hearing in response to

the court's December 19, 2011 order; however, the parties have been unable to attend a

hearing at any of the times offered by the court. To avoid unnecessary further delay, the

court will now proceed to rule on this motion without a hearing.

## BACKGROUND

This case is in essence a boundary dispute. The Plaintiffs have brought claims for

quiet title and declaratory judgment against the Chamberlains, Mortgage Electronic

Registration Systems, Inc. and TD Banknorth, N.A. (the Chamberlains' mortgagees), and

for trespass against the Chamberlains only. The Chamberlains have counterclaimed

against the Tufts, Auburn Savings Bank ("Auburn") and Mortgage Electronic

1

Registration System, Inc. ("MERS") bringing counts under the declaratory judgment act seeking declarations, in the alternative, for deeded ownership, prescriptive easement, adverse possession and for trespass (as against the Tufts counterclaim defendants only) and unjust enrichment. The Defendants have also brought a Motion for Joinder, under M.R. Civ. P 19, in order to join Auburn and MERS as counterclaim defendants.

## DISCUSSION

The Defendants move for joinder of Auburn and MERS because Auburn holds a mortgage on the Plaintiff's property, recorded in the Cumberland County Registry of Deeds, Book 26175, Page 7, and MERS is the nominee of Residential Mortgage Services, Inc., also holder of a mortgage on the Plaintiffs' property recorded in the Cumberland County Registry of Deeds in Book 26857, Page 172.[1]

Under M.R. Civ. P. 19(a), a party that is subject to service of process must be joined if complete relief cannot be attained between the existing parties in the absence of the party to be joined or the party to be joined claims an interest in the subject matter of the action and their absence may as a practical matter impede their ability to protect that interest or leave one of the parties subject to substantial risk of inconsistent of multiple obligations. The first part of this rule is designated to protect those who are already parties by forcing all those with an interest in the litigation to participate so that relief may be completely and finally awarded. *Efstathiou v. Payeur*, 456 A.2d 891, 893 (Me. 1983) (*quoting* 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1604, at 36 (1972) (note omitted)). The second part of the rule is designed to protect the interests of the absent party.

---

[1] There is no indication as to why Residential Mortgage Services, Inc. has not been joined.

2

The Defendants argue that Auburn[2] and MERS must be joined because they hold an interest in the Tufts' property as described in the Tufts' deed, recorded in the Cumberland County Registry of Deeds, Book 16503, Page 266, and it is through this deed that the Tufts' claim ownership of the disputed parcel. Therefore, the parties are necessary to fully adjudicate the question of ownership of the disputed parcel.[3] Also, if MERS is not joined, its rights will be adjudicated without the opportunity for them to protect that interest.

The Plaintiffs oppose the motion. Their argument appears to be that because the deed descriptions establish the northern boundary of their property by reference to the Chamberlains' property, and shifting of that boundary does not change the deed description it also does not change the interest that the mortgagee has in the property. This is in contrast to the property description contained in the Defendants' deed, which references the boundary as the "right of way leading into the Late George Newell Chamberlain camp."[4] The Plaintiffs argue that this description is in error and "is also junior or subordinate to the description of the Plaintiffs' northerly boundary as found in their chain of title." (Pl. Br. 3.) Furthermore, the Plaintiffs argue, because the Defendants have not sought reformation as a remedy it is unnecessary to join the Plaintiffs' mortgagee.

· The Defendants reply, arguing that if the Plaintiffs succeed in their case in chief, the resulting property will be quadrilateral rather than triangular and the deed descriptions

[2] Defendants have since dismissed Auburn Savings Bank as its mortgage has since been discharged.

[3] It should be noted that the Plaintiffs chose to include the Chamberlains' mortgagees as defendants. This means that the Plaintiffs determined that they could not obtain complete relief without adjudicating the mortgagees' rights.

[4] This appears to be an explanation as to why the Defendants' mortgagees were included as defendants but the Plaintiffs' mortgagees are unnecessary parties.

3

will no longer make sense, even if the description of the boundary remains the same and that the mortgagee's interest in the parcel could be affected.

The Plaintiffs' argument is unconvincing. Even if the words of the deed description do not change, the underlying parcel may change which would mean that the mortgagee might then have a larger or smaller interest than believed. The Plaintiffs are also incorrect to state that the northern boundary with the Chamberlain property is described without reference to a monument. The deed description actually refers to two stakes; these are fixed monuments and should be able to be located on face of the earth. Any alteration of ownership of the properties will require an alteration of the deed descriptions. Also, if the mortgagee is not allowed to participate its rights may be adjudicated without participation and without subsequent redress because the issue will have been fully litigated. The Defendants have established that the mortgagee of the Plaintiffs have an interest in the subject of the litigation and that the mortgagee is at risk of being unable to protect those rights if they do not participate in this action, thus making them necessary parties. There is no indication that MERS is not subject to service of process.

**The entry is:**

The Motion for Joinder is GRANTED.

April 2, 2012

Joyce A. Wheeler, Justice

Bernald W Tufts et al-Frank Chowdry Esq

Norman G Chamberlain II et al-Jason Dionne Esq

TD Banknorth NA-Stephanie Williams Esq

MERS-Alexander Saksen Esq                    4

STATE OF MAINE
CUMBERLAND, SS

SUPERIOR COURT
DOCKET NO.
PORSC-RE-2011-472
CAM-CUM- 12/10/2013

BERNALD W. TUFTS, et al.
    Plaintiffs

v.

DECISION AND ORDER

NORMAN G. CHAMBERLAIN, et al.,
    Defendants

STATE OF MAINE
Cumberland ss. Clerk's Office

DEC 7 ... 2013

RECEIVED

## INTRODUCTION

This litigation concerns a disputed parcel of land near Sabbathday Lake (the "disputed parcel") and an existing driveway crossing the disputed parcel (the "existing driveway"). The litigation more particularly confronts the questions whether the Tufts or Chamberlains own the disputed parcel over which the existing driveway crosses and, if not the Chamberlains, then whether the Chamberlains have a right to use the existing driveway. The Chamberlains have used the existing driveway to access their Sabbathday Lake property for many years and have not used for many years a prior deeded right of way to their property. The disputed parcel is an unoccupied, steep, wooded parcel.

In 2010, the Tufts came to believe through the work of their surveyor,

Robert Yarumian, that they own the disputed parcel, including the existing driveway, and that their property is in the shape of a rectangle. It is this disputed parcel that shapes Tufts' property into a rectangle if Yarumian is correct. Palmiter and another surveyor concluded that Tufts' property is a triangle. Until trial the Chamberlains claimed ownership of the disputed parcel in accordance with the survey of John Palmiter done in 1998. Their claim during the trial reduced itself to a claim of right to the existing driveway.

The Tufts filed a Complaint for declaratory judgment in Count I, trespass in Count II and quiet title in Count III. The Chamberlains filed a Counterclaim for declaratory judgment-deeded ownership in Count I, declaratory judgment-prescriptive easement in Count II, declaratory judgment-adverse possession in Count III, trespass in Count IV and unjust enrichment in Count V.

After week-long non-jury trial, at which the court heard conflicting evidence in many different forms, including, but not limited to, lay testimony, expert testimony, photographs, maps, surveys, drawings, written correspondence and ancient documents, the court finds as discussed below that by a fair preponderance of the evidence (1) the Tufts now own the

2

disputed parcel of property (and more[1]), and (2) the Chamberlains have a prescriptive easement to use of the existing driveway across the Tufts' property.

## FACTS

Bernard Tufts' family has lived on his Sabbathday Lake property since 1943 when his grandparents, the Sagers, acquired the property. Tufts did not acquire title to the property until 2001 and did not begin living there year-round until 2008-2009. The current dispute began when Bernard Tufts had discussions in 2008 with Norman Chamberlain about Chamberlain's 1998 survey preformed by John Palmiter. Palmiter drew Tufts' parcel as a triangle with its northeasterly boundary parallel to the existing driveway used by the Chamberlains. Tufts planned to build a fence on his northerly boundary to contain his dogs. Chamberlain and Tufts disagreed about the location of their apparent shared boundary line, and Tufts contended that Chamberlain's driveway to his camp came across land (the disputed parcel) that Tufts believed belonged to his family. Part of Tufts' belief rested on statements his mother made to him about the property boundary. (Ex. 60.)

---

[1] As the result of a transfer during the trial from the heirs of Tresa Greeley, the Tufts received title to the triangular parcel over which the existing driveway passes, and the gore, which includes the parcel to the south of the Chamberlains' former right of way wrongly allocated to the Chamberlains in Palmiter's 1998 survey. The claims in this case have created a moving target for the court to analyze.

Tufts recalled that in the 70s or 80s a driveway just showed up on the disputed property and a fence came down. At the time, the Tufts' camp was seasonal so no one saw the building of the driveway. Tufts admitted that he can not claim property that is not included in his deed. However, he believes the disputed parcel is in his deed as construed by Yarumian and he never gave Chamberlain permission to use the existing driveway.

John Palmiter completed in 1998 the first of several surveys considered in this case. Palmiter's survey was done for Chamberlain. Tufts rejected Palmiter's survey because it was inconsistent with what he believed his property included. Palmiter's survey drew property lines for Chamberlain's second parcel (adjacent to his first parcel fronting on Sabbath Day Lake) to include the disputed parcel and drew Tufts' property as a three-sided parcel with the northeasterly boundary parallel to the existing driveway in accordance with Tufts' deed description. Palmiter's survey contained a significant discrepancy in the south easterly boundary of the Chamberlain's second parcel, using 341.12 feet rather than the called for 225 feet. By extending the southeasterly boundary line for Chamberlain, Palmiter was able to draw Chamberlain's second parcel as including the disputed parcel and the existing driveway. There are other maps that mirror to some

4

degree Palmiter's drawing, including the 1966 and 1969 tax maps, but these have little relevance to determining the legal issues in this case.

Robert Yarumian rejected Palmiter's survey and redrew the boundaries for the Tufts lot to include the disputed parcel and existing driveway. Yarumian testified that the source deed in Tufts' chain of title contains a latent ambiguity. The 1923 source deed from Myra A. Greeley to J. E. Sawyer read as follows:

> [A] certain lot or parcel of land situated in New Gloucester County of Cumberland and State of Maine, bounded and described as follows (viz) a certain lot or parcel of land located between the South Shore of Sabbathday Lake and the road leading from the William Chapman place to Dry Mills, bounded and described as follows (viz) beginning at the corner of land owned by Arthur Webb and running North Easterly one hundred and thirteen feet along the land of Arthur Webb and Son to an iron stake, thence southeasterly one hundred and seventy five feet *along land owned by George Chamberlain* to another iron stake, thence westerly along the land of Myra A. Greeley, one hundred feet to the point of beginning.

(Ex. 8 (emphasis supplied).) This description is carried forward in each of the successor deeds in the chain of title to the 1993 deed of C. Raymond Segars, which changed nothing in the description. The 1993 Segars deed reads as follows:

> Beginning at the corner of a lot owned by Arthur Webb and running north easterly one hundred and thirteen feet (113) along the land of Arthur Webb and Son, to an iron stake; thence southerly one hundred and seventy-five (175) feet *along land now or formerly owned by George Chamberlain* to another iron stake; thence westerly along the

5

land now or formerly of Myra A. Greeley to one hundred feet (100) to the point of beginning.

(Ex. 9 (emphasis supplied).) This is the same description that appears in the deed to Bernard W. Tufts and Judith J. Tufts in their 2001 deed.

According to Yarumian, the ambiguity arises from a description of Tufts' northerly boundary in the 1923 source deed as being "along the land owned by George Chamberlain." In 1923 Chamberlain's ancestors owned only the lot fronting on Sabbathday Lake and that lot did not abut the northerly boundary of Tufts' predecessors. The Chamberlains did not acquire a second parcel adjacent to their lake front lot and abutting the Tufts' land until 1931. According to Yarumian, that ambiguity (erroneous description of the Tufts' northerly boundary) permits the introduction of parol evidence to determine who owned the contested parcel.

Yarumian opined that there is a missing call in the description in the 1923 deed, which he believes occurred because this was not an original deed, but a copy of the original deed. The deed states "Received September 10, 1923 . . . and recorded according to the original." (Ex. 8.) He also considered that the 1923 deed references "along the land owned by George Chamberlain" but in 1923 George Chamberlain did not own the contested triangle over which the existing driveway crosses. Yarumian concluded that

6

this is a patent ambiguity that requires that one go outside the deed to reconcile the boundaries.

Yarumian assumed that the northerly line was omitted in the source deed description. He surveyed other properties on the lake and they all dealt with the same grantor and none of the other properties were triangles, all were four-sided properties. Yarumian added new information by creating a "missing call" in Tufts' deed bringing the northerly boundary to Chamberlain Road, rather than to land owned by George Chamberlain, thereby creating a rectangular parcel of property belonging to Tufts, which includes the contested parcel and the existing driveway. He assumed a distance of 100 feet as the missing call based on the deeded distance of the southerly line being 100 feet. The distance of 100 feet also struck the assumed sideline of Chamberlain Road. Yarumian opined that "it appears as though Chamberlain Road should have been called for as the easterly boundary, not land of George Chamberlain." (Ex. 43, n. 7.)[2]

_____

[2] Yarumian also relied on a hand-drawn map (Ex. 16.) that disclosed a rectangular lot, not a triangular shaped lot. According to Yarumian, the configuration of the southeasterly boundary in the hand-drawn map correlates with the description contained in the 1952 Walsh deed, an easterly abutter to the contested parcel. The 1952 measurements in the Walsh deed informed Yarumian that a survey had been done and it didn't call for monuments but called for measurements, which supported Yarumian's interpretation of a missing call in the Tufts' deed. Yarumian also opined that the New Gloucester tax maps for 1966 and 1969 (Ex. 50.) do not show the Chamberlain existing driveway. But, those maps disclose parallel lines in the location of the existing driveway and, according to another witness, parallel lines mean a right of way or a road. The 1966 and 1969 tax maps also disclose Tufts' parcel to be a triangular parcel adjacent to the parallel lines.

7

Before hiring Yarumian, Tufts hired Wayne Wood to perform a survey. Wood, who testified that he followed the Rules of Construction, drew Tufts's property as a three-sided parcel with the northeasterly boundary parallel to the existing driveway in accordance with Tufts' deed description. Tufts rejected that survey because Wood did not follow primary monuments. Tufts believed that Wood and Palmiter ignored or changed definitions of some monuments. Wood's survey drew Chamberlains and Tufts property lines to exclude the disputed parcel, however Wood did not identify on his survey the owner of the disputed parcel. In later testimony, Wood described the owners as the heirs of Tresa Greeley.

According to Donald Dostie, the Chamberlains' surveyor for trial, and Wood, there is no mathematical ambiguity in Tufts' source deed description for the triangular parcel or any reasonable argument to support Tufts' claim of a "scrivener's error" of dropped courses in the description since the original conveyance matches the current description for the property. Dostie reviewed the chain of title and the deeds in that chain, but the first deed into Chamberlain was missing. He reviewed the Tuft's deed (Ex. 8.), which appeared to be a triangle and contained a description of "along land by George Chamberlain" which introduced the ambiguity identified by Yarumian. However, the distance called for was 175', which was pretty

8

close to the description. The Tufts' deed closes mathematically. According to Dostie, the standard rule of construction for deeds is to determine the original intent and start at a point at the beginning and follow meets and bounds, looking for monuments, courses, distances and quantity. Dostie testified that if there is an erroneous call as here, the rule of construction is that it is still a good deed mathematically and hold to the deed instead of adding more land.

Palmiter and Wood drew Tufts' property as a triangular lot, although with different boundary lines. Palmiter and Wood, however, differ about who owns the land east of the hypotenuse. According to Wood, the land to east of the hypotenuse refers to a parcel of land never deeded out of the Greeley chain of title. (Wood Dep. 16, 24-25 and 17, 1-12.) Yarumian and Wood agree there is a gore and the heirs of Tresa Greeley own the gore, but they disagree what land comprises the gore.[3]

Tufts admits that Yarumian drew a northerly line not in accordance with his deed. Nevertheless, Tufts alleges that he owns the disputed parcel by virtue of his deed based on Yarumian's analysis. Chamberlain concedes

---

[3] In attempting to resolve the dilemma of who owns the disputed parcel, Yarumian found there was a "gore" between Tufts and Chamberlains' second parcel. Yarumian took title back to establish that the heirs of Tresa B. Greeley own the property in the gore. This opinion is consistent with that of Wood that the heirs of Greeley own some of the property that either Chamberlain and/or Tufts claim they own.

9

that he does not hold title to the disputed parcel but he does have a legal interest in the existing driveway.

## DISCUSSION

I.  Deeds, Boundaries and the Disputed Parcel and the Gore

What the boundaries are, as ascertained from the deed, is a question of law. *Conary v. Perkins*, 464 A. 2d 972, 975 (Me. 1983). Where boundaries are on the face of the earth is a question of fact. *Id.* The court should first look for the controlling intent of the parties on the face of the deed. *Taylor v. Hanson*, 541 A. 2d 155, 157 (Me. 1988). "Typically the face of the deed is examined to reveal the intent of the parties, unless facts outside the deed reveal a latent ambiguity-then the 'standard rules of construction and circumstances surrounding the drafting of the deed' are used to resolve the issue of intent." *Hennessy v. Failey*, 2002 ME 76, ¶ 21, 796 A. 2d 41 (quoting *Wallingford v. Kennedy*, 2000 ME 112, ¶15, 753 A. 2d 493, 497. "Unless application of the standard rules of construction would yield absurd result or results, the rules require that the boundaries be controlled in descending order or priority by monuments, courses, distances and quantity." *Id.* at ¶ 18.

10

Here the calls of the Tufts' deed close the property. Although this interpretation results in a gore (land not conveyed by Tresa Greeley), the court is able to follow each of the calls of the deed by using the standard rules of construction. Accordingly, this court will not rewrite the deed by creating a new course and add land to the Tufts' triangular piece of property. To that end, the court rejects Yarumian's opinion. The land of George Chamberlain is not a monument. Even if that reference created an ambiguity, there is no extrinsic evidence of the intent of the parties. Nor is there any extrinsic evidence of the contemporaneous construction of the deed by the grantee or grantor. The only extrinsic evidence is that Chamberlain did not own land along the southeasterly boundary of Tufts' parcel. Without specific evidence that the parties intended otherwise, the results not being absurd or manifestly inconsistent with the intent of the parties apparent from the face of the deed, the court will follow the standard rules of construction. The court accepts Wood's survey as the most reliable evidence for construing the deeds and determining the boundaries in this case.

The court concludes that the disputed triangular parcel, including the existing driveway, and the gore, including the parcel to the south of Chamberlain's former right of way from Chamberlain Road, was not owned by Tufts or Chamberlain at the time this lawsuit began. Although Wood had

11

recommended to Chamberlain that he get a deed from the Greeley heirs to solidify his claim over the existing driveway, he never did this. Tufts, on the other hand listened to Yarumian and obtained deeds in October 2012 from the Greeley heirs to transfer Greeley land, including the disputed parcel and the gore to the south of Chamberlain's former driveway to the Tufts.

That the Tufts now own the disputed parcel does not resolve whether the Chamberlains have a right or interest in the existing driveway that crosses the Tufts' property.

## II.    The Existing Driveway

The court rejects Dostie's testimony that "land owned by George Chamberlain" refers to the right-of-way conveyed to George Chamberlain's predecessor-in-title in 1906, and which is located approximately in the present location of the existing driveway. The 1906 deed conveyed the first of the Sabbathday Lake lots that originated from the Sawyer farm, reflected in a deed from Henry Sawyer to W. E. Cutler, which is part of the Chamberlain chain of title. (Ex. 4) The 1906 deed conveyed "a convenient right of way over said premises to the highway passing my farm." The stipulated chain of title shows the same land was later conveyed to George Chamberlain in 1911. (Ex. 4.) Chamberlain argues that the 1911 deed conveyed the same easement as the 1906 deed, resulting in George

12

Chamberlain owning a "convenient right of way over [the Sawyer land] to the highway passing [the Sawyer] farm." Def's Post Trial Mem, 4. Tufts counters that the 1911 deed omits any reference to any right of way. Pl's Closing Argument, n. 3. The 1911 deed is not in evidence and thus the court cannot make any inference about a right of way in the 1911 deed. The court concludes that in 1923 George Chamberlain could have owned, at most, the lot along the water with a convenient right of way. There is very little to place this "convenient right of way" on the face of the earth. And, the court does not find that Chamberlain established by a preponderance of the evidence that the 1911 deed conveyed a convenient right of way.

There is some evidence to support the claim that the convenient right of way to the Chamberlains' lake lot and the existing driveway are one and the same. All the surveyors included a reference to an old right of way that ran generally along the utility pole line that passes through the disputed parcel. Dostie and Yarumian's admissions establish that utility lines constructed in the early 20th century would typically run along roadways or clearings. The utility company would have serviced one of the earlier camps located northerly of Chamberlain's land. A review of all of the surveys supports the opinion that the original convenient right of way ran from Snow Hill Road, up Allen Avenue and across the existing driveway.

13

Additionally, there was a shed along the power line. The shed was originally an ice shed and as such likely would have been near a road. This provides further confirmation that a road followed the power line; however, not to the level of a preponderance of the evidence.

Dostie opines that there were two rights of way. In 1906, there was a deeded right of way to use their present driveway. In 1931, the second parcel was created. (Ex. 7) According to Dostie the 1931 deed conveys a possible second right of way. The court has considered and rejected Dostie's argument that the 1931 deed created another right of way. The 1931 deed conveyed a second parcel of land of approximately 1,500 square feet lying directly east and adjacent to the 2/3rds of an acre parcel conveyed to Chamberlain in 1911. The first paragraph of the 1931 deed refers to a right of way known as the former right of way into George Chamberlain's camp that comprises the southern-most boundary of Chamberlain's second parcel. The second paragraph of the 1931 deed contains another reference to a right of way. This second paragraph refers to the same right of way contained in the first paragraph of the 1931 deed. The distances and monuments support this conclusion. Thus there was only one deeded right of way, that is, the "former right of way".

14

The court agrees with Yarumian's conclusion that Chamberlain's second parcel is limited on the southerly end by the former right of way leading into George Newell Chamberlain's camp. This is the right of way that has not been used by the Chamberlains for many years and has been referred to as the "former right of way". The current Chamberlain description, a combination of both parcels, is carried forward from a 1939 deed. The current description only has one reference to a right of way leading to the land of George Chamberlain. This is a reference to the former right of way and not the "convenient right of way" conveyed in 1906.

The court agrees with Dostie that the existing Chamberlain driveway was most likely the "convenient right of way" of George Newall Chamberlain, but not because of a title interest in the existing driveway but because of the evidence developed at trial supporting a finding of a prescriptive easement.

An easement by prescription requires an adverse use that is continued uninterruptedly for 20 years. 14 M.R.S.A. § 812.

> The party claiming a prescriptive easement has the burden at trial of proving by a preponderance of the evidence each of the following elements: (1) continuous use for at least twenty years; (2) under a claim of right adverse to the owner; (3) with the owner's knowledge and acquiescence, or with a use so open, notorious, visible and uninterrupted that knowledge and acquiescence will be presumed.

*Androkites v. White,* 2010 ME 133, ¶ 14, 10 A. 3d 677, 682.  See also *Sandmaier v. Tahoe Development Group, Inc.,* 2005 ME 126, ¶ 5, 887 A. 2d 517, 518.

The first element of continuous use for at least twenty years is disputed. Tufts argues this was a seasonal property and that Chamberlain at most visited it from time to time: He had no uninterrupted use until he purchased the property in 1993 and his renovations were completed in 1994. The second element whether Chamberlain and his father's use of the driveway was under a claim of right adverse to the owner remains in dispute. The third element of prescriptive easement of knowledge and acquiescence is not in dispute.

The Chamberlain family land on Sabbath Day Lake goes back to September 1911 when Chamberlain's great grandfather bought the land. The Chamberlains maintained a driveway to service their seasonal home on Sabbathday Lake. The seasonal cabin was converted to a year-round home in 1967, and the Chamberlains upgraded the existing driveway when they bull dozed it in the 70s. The Chamberlains have used the existing driveway since at least the 1950s and improved the driveway in the 1970s. In 1998, Chamberlain commissioned a survey from John Palmiter. That survey

reflected the existing driveway crossing over the disputed parcel. All surveys commissioned since then disclose the existing driveway.

Norman Chamberlain spent most of his summers as a child on the property. His family accessed the family property using the existing driveway. Chamberlain recalls a family reunion in 1963 when he was seven years old. He recalls someone saying the driveway was on someone else's property.[4] However, Chamberlain recalls his father and him cutting a tree down before he and his father bulldozed the driveway in early 1970s. His family always treated the existing driveway as their property and they never asked permission to use it. The court concludes that the true owners either acquiesced to such use or the Chamberlains' use was so open, notorious, visible and uninterrupted that acquiescence is presumed.

Chamberlain recalls using only the existing driveway. He does not recall the last time the former right of way was used. Since the 1950s the existing driveway has always been passable and used by the Chamberlain family. Mary Lee Hanson, who was previously married to Chamberlain's father and is now 81 years old, recalled living with her in-laws in the summer of 1952. She recalled always using the existing driveway. Even after she was divorced from Chamberlain's father, she recalled dropping off

---

[4] Knowledge of a conflicting interest "does not bar a prescriptive claim." *Dowley v. Morency*, 1999 ME 137, ¶ 26, 737 A. 2d 1061, 1070.

and picking up the children on visits and always used the existing driveway. Mr. Zachau, another witness, testified that he used to plow the roads back in 1968-69 and recalled plowing only the existing driveway. Ten years later when he returned to the Chamberlain property, Zachau accessed the property using the existing driveway.

On this evidence, the court finds that Chamberlain established by a preponderance of the evidence continuous use of the existing driveway for at least 20 years, under a claim of right to pass over the existing driveway, including maintaining the driveway by bulldozing it, with a use so open, notorious, visible and uninterrupted that knowledge by acquiescence will be presumed. Accordingly, the court finds that Chamberlain has a prescriptive easement over the existing driveway.

The entry is:

1. Judgment for declaratory judgment on Count I of the Complaint. Counts II and III are dismissed with prejudice.

2. Judgment for a declaratory judgment-prescriptive easement on Count II of the Counterclaim. Counts I, III, IV and V are dismissed with prejudice.

Date: December 10, 2013 _____
Joyce A. Wheeler, Justice

Bernald Tufts et al-Frank Chowdry Esq
Norman Chamberlain et al-Jason Dionne Esq

18